IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| Respondent, | * |
| v. | * Crim. No. 13-cr-492-DKC |
| ISHMAEL FORD-BEY | * |
| Petitioner. | * |

**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO VACATE
PURSUANT TO 28 U.S.C. § 2255**

The Petitioner, Mr. Ishmael Ford-Bey, by and through his attorneys, Michael E. Lawlor, and Nicholas G. Madiou, Brennan, McKenna & Lawlor, Chtd., hereby respectfully files this reply to the Government's opposition to his motion to vacate pursuant to 28 U.S.C. § 2255. The Petitioner respectfully requests that this Honorable Court grant a hearing on this matter, vacate his convictions, and order a new trial. In support thereof, counsel state the following:

**ARGUMENT**

I. **Trial Counsel Rendered Ineffective Assistance by Failing to Investigate and Move to Suppress Evidence Seized from the Texas Truck Stop and the Search of Petitioner's Pennsylvania Avenue Apartment.**

   A. **Texas Truck Stop**

The fruits of the Texas truck stop formed the complete foundation of the Government's case against Mr. Ford-Bey. Without law enforcement seizing approximately 127 kilograms of cocaine on August 15, 2012, law enforcement does not identify or charge Mr. Ford-Bey in this case. It is critical for this Court to consider these circumstances when assessing counsel's deficient performance. Prior counsel failed to investigate the facts and

1

circumstances of the Texas truck stop. In failing to do so, prior counsel further failed to move to suppress the fruits of that stop when a viable claim for suppression clearly existed.

In this case, prior counsel failed to conduct any investigation into the facts and circumstances of the Texas truck stop despite the fact that the fruits of that seizure formed the Government's case against Mr. Ford-Bey. Under these circumstances, competent counsel would have, at a minimum, reviewed and investigated relevant facts allegedly supporting the constitutionality of the stop, and engaged in an analysis of whether a viable motion to suppress the evidence existed.

Had trial counsel investigated the circumstances of the Texas truck stop, counsel would have discovered that law enforcement's conduct was not justified under the Fourth Amendment. In its opposition, the Government does not even attempt to set forth facts that amount to reasonable suspicion or probable cause to justify a constitutional stop. Indeed, the Government's only attempt to set forth any lawful justification for the stop comes in a footnote, where the Government argues in passing that the stop "was a lawful administrative search under Texas law regulating commercial vehicles." ECF Dkt. No. 610, at fn 2. The Government altogether ignores the fact that even if such initial stop was lawful for administrative purposes, after a negative canine search, and with no level of lawful suspicion, officers illegally prolonged the stop resulting in the seized contents. A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter." *Knowles v. Iowa,* 525 U.S. 113, 117 (1998).

Had trial counsel conducted any investigation of the Texas truck stop, counsel would have determined that the stop was likely illegal and been compelled to move to suppress the most important evidence in this case. When such colorful grounds for

suppression exist, Courts of Appeals have held that it is deficient for trial counsel not to move to suppress such critical evidence. *See Thomas v. Varner*, 428 F.3d 491, 500-02 (3d Cir. 2005); *Rodriguez v. Young*, 906 F.2d 1153, 1161 n.3 (7th Cir. 1990); *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991). Indeed, in this case, as in *Molina*, Mr. Ford-Bey had "everything to gain and nothing to lose" in filing a motion to suppress the fruits of the Texas truck stop. 934 F.2d at 1447.

In arguing that trial counsel's performance was not deficient, the Government claims only that Mr. Ford-Bey lacked standing to contest the Texas truck stop. ECF Dkt. No. 610, at 10-15. The Government frames the issue of standing as if this Court "took up the exact issue when co-defendant Andracos Marshall" moved to suppress the cocaine seized in Texas. In truth, the Court is not presented with the same facts at all as it pertains to standing. Unlike, Mr. Marshall, everyone agrees that Mr. Ford-Bey was the intended recipient of the 13 boxes of contraband seized on August 15, 2012. Indeed, "[t]he boxes were destined to be delivered to 'Shorty,' an individual later identified as Ford-Bey." ECF Dkt. No. 610, at 2. The boxes were then actually delivered to Mr. Ford-Bey in an attempted controlled delivery.[1]

The boxes in question belonged to Mr. Ford-Bey. He had hired a private currier to ship these sealed boxes to him. Ultimately, Mr. Ford-Bey took possession of the boxes in question. Mr. Marshall could not say the same on any of these points. Under these circumstances, Mr. Ford-Bey has established "a legitimate expectation of privacy in the

---

[1] In its opposition, the Government incorrectly asserts that Mr. Ford-Bey was observed by law enforcement "buying over 100 kilograms of cocaine in a controlled buy." ECF Dkt. No. 610, at 16. During this transaction no money ever exchanged hands. The transaction can more accurately be described as an attempted controlled delivery, not a controlled buy.

invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Mr. Ford-Bey's property interests in the seized boxes could not be more clear. "[P]roperty rights reflect society's explicit recognition of a person's authority to act as he wishes in certain areas, [they] should be considered in determining whether an individual's expectations of privacy are reasonable." *Id.* at 153. Moreover, Mr. Ford-Bey has demonstrated his ownership and control of the property in question. As such this Court should further consider Mr. Ford-Bey's claim of ownership "or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property." *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992).

The Government's reliance on *United States v. Rose*, 3 F. 4th 722 (4th Cir. 2021) is misplaced. There, unlike here, the defendant sent a sealed package addressed to a person other than the intended recipient. *Id.* In this case, Mr. Ford-Bey was the intended recipient, he was the purported recipient (i.e. Shorty), and eventually he was the actual recipient of the sealed boxes. His ownership interest and property rights in those sealed items are without question. As even the Fourth Circuit recognizes in *Rose*

> Sealed envelopes and packages generally enjoy a high degree of privacy and, thus, courts have long recognized that the Constitution protects against unreasonable searches and seizures of sealed mail. *United States v. Givens*, 733 F.2d 339, 341 (4th Cir. 1984) (per curiam) (citing *Ex parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877 (1878)). Both senders and recipients of letters and other sealed packages ordinarily have a legitimate expectation of privacy in those items even after they have been placed in the mail. *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970) (citing *Jackson*, 96 U.S. at 733).

*Id.*

Under these circumstances, Mr. Ford-Bey had a reasonable expectation of privacy in the 13 sealed boxes seized during the Texas truck stop, giving him standing to challenge

4

that stop and move to suppress the evidence seized therefrom. Trial counsel's failure to investigate the circumstances of this critical aspect of Mr. Ford-Bey's case, and his failure to move to suppress that evidence when such a colorful motion to suppress existed constitutes deficient performance.

In this case, prejudice is shown when, as here, there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. This standard of proof of course "represents a fairly low threshold." *Riggs v. Fairman*, 399 F.3d 1179, 1183 (9th Cir. 2005). Had trial counsel not failed to conduct these basic defense functions, "there is a reasonable probability that," Mr. Ford-Bey "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Government calls Mr. Ford-Bey's assertion of this fact self-serving, and as such asks this Court not to credit his affirmation. However, as the evidence seized from the Texas truck stop served as the primary basis of the Government's case against Mr. Ford-Bey, the fact that he would have proceeded to trial following an adequate investigation and after moving to suppress is entirely reasonable. Again, at that point, Mr. Ford-Bey had "everything to gain and nothing to lose" in trying to suppress the fruits of the Texas truck stop. *Molina*, 934 F.2d at 1447.

### B.  Search of Pennsylvania Avenue Apartment

The Government argues that trial counsel was not deficient for failing to investigate and then move to suppress the fruits of the search of Mr. Ford-Bey's Pennsylvania Avenue apartment. ECF Dkt. No. 610, at 15-16. To support the Government's argument, it sets forth what "ample probable cause [existed] to obtain a search warrant for the apartment." *Id.* at 16.

> Consider the facts as counsel would have understood them: On August 17, law enforcement had observed the defendant buying over 100 kilograms of cocaine in a controlled buy; fleeing from police in a high-speed chase that ended in a car collision; escaping on foot; and returning to his Pennsylvania Avenue lobby, only to drop his bag of pre-paid cell phones and flee after making eye contact with law enforcement. All of these facts would have amounted to, and did amount to, ample probable cause to obtain a search warrant for the apartment.

*Id.* In arguing that the search warrant was supported by probable cause, The Government misses the thrust of Mr. Ford-Bey's claim.

Law enforcement's search of the Pennsylvania Avenue apartment at least three hours prior to obtaining a search warrant was illegal. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (establishing that warrantless searches and seizures are *per se* unreasonable); *see also Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.")

Law enforcement's search of Mr. Ford-Bey's Pennsylvania Avenue apartment prior to obtaining a search warrant cannot be justified by "exigent circumstances." *See* ECF Dkt. No. 610, at fn. 3. It is true that one "well-recognized exception" to the warrant requirement "applies when '"the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (*citing Mincey v. Arizona,* 437 U.S. 385, 394 (1978)). However, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). The United States Supreme Court has recognized several exigencies that may justify a warrantless search of a home. *See e.g. Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006) (recognizing

6

an "emergency aid" exception); *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (recognizing that police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect); and *Ker v. California*, 374 U.S. 23, 40 (1963) (recognizing exception to prevent the imminent destruction of evidence).

None of these exceptions are presented in this case. The officers could have no cause to believe Mr. Ford-Bey would destroy evidence in the apartment as he was fleeing that area. Likewise, the 'hot pursuit' exception would not apply as Mr. Ford-Bey's flight was taking him away from the apartment. In this case there is simply no justification for law enforcement conducting its search of the apartment prior to obtaining a warrant as required by the Fourth Amendment.

Under these circumstances, trial counsel rendered ineffective assistance by failing to investigate the circumstances of the Pennsylvania Avenue apartment search, and further failing to move to suppress the fruits of that search. As affirmed by Mr. Ford-Bey, had trial counsel conducted this basic defense function, Mr. Ford-Bey would not have pleaded guilty and instead insisted on going to trial in this case. For these reasons, Mr. Ford-Bey respectfully asks this Honorable Court to vacate his conviction and sentence in this case.

**II.    Counsel Rendered Ineffective Assistance Based on Affirmative Misadvice.**

Despite the fact that Mr. Ford-Bey was advised of the 20-year mandatory minimum term of incarceration in this case, his trial counsel was nevertheless ineffective by affirmatively misadvising him that he would receive a sentence of no more than 20 years of prison. As a matter of course, every defendant that pleads guilty is, or should be, advised of the maximum possible penalties associated with the crime for which they are pleading guilty. Despite that fact, defendants are routinely advised off the record by counsel as to

what to expect in terms of punishment at the time of sentencing. That is exactly what occurred in this case. Mr. Ford-Bey was properly informed of the fact that the Court *could* sentence him from anywhere from 20 years to life imprisonment. The error in this case occurred when trial counsel assured Mr. Ford-Bey that he would receive a sentence of no more than 20 years of imprisonment if he pleaded guilty despite that possibility of a more significant sentence.

*Hill v. Lockhart* is the confluence of the Supreme Court's precedential lines concerning pleas with that of the, at the time, newly set forth *Strickland* analysis. As the Court explained, pre-*Strickland*, it had held, "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Hill*, 474 U.S. at 56-57 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). In *Hill*, the Court made it abundantly clear that the *Strickland* analysis applies to ineffective assistance of counsel claims that arise in plea cases.

In the case at bar, Mr. Ford-Bey was denied the effective assistance of counsel under *Strickland* when, in making the decision to plead guilty, he relied on his counsel's incorrect statement that the Court would not impose a sentence of more than twenty years of incarceration. Being advised that the Court could impose a greater sentence does not cure this error, when Mr. Ford-Bey relied on counsel's erroneous advice. As set forth in Mr. Ford-Bey's affidavit of truth, but for trial counsel's misadvice, he would not have pleaded guilty and instead insisted on going to trial in this case. *See* ECF Dkt. No. 570-1, 2-3.

**III.    *Brady Violation***

The Government argues that Mr. Ford-Bey's *Brady* claim is conclusory, by generally alleging that the Government failed to disclose any information surrounding the Texas truck stop. ECF Dkt. 610, at 22. The Government then lists, as examples, specific items of evidence, "an exhibit, a document, a bill of lading, a photo, a police report, a witness interview summary" that Mr. Ford-Bey should have alleged were required to be produced but were not. By stating that the Government failed to produce any evidence regarding the circumstances of the Texas truck stop, Mr. Ford-Bey clearly asserts that the Government did not produce evidence such as the examples presented by the Government in its response. Because the Texas truck stop formed the very basis of the Government's case against Mr. Ford-Bey, and because such evidence was material to Mr. Ford-Bey's defense, the Government had an affirmative duty to disclose all relevant discovery relating to that event.

The Government further rests on the assertion that because "the defendant had no standing to move to suppress the evidence from the Texas truck stop, and he suffered no prejudice from his trial counsel's failure to so move," the Government had no affirmative duty to produce such evidence and that that evidence was not material. ECF Dkt. No. 610-, 22-23. For the reasons presented above, Mr. Ford-Bey had standing to suppress the fruits of the Texas truck stop and, had his lawyer not failed to investigate and move to suppress that evidence, Mr. Ford-Bey would not have pleaded guilty.

Finally, in a passing footnote, the Government claims that because Mr. Ford-Bey pleaded guilty prior to going to trial, the protections afforded by *Brady v. Maryland* do not apply to him. *See* ECF Dkt. No 610, at fn. 5. Particularly in light of the importance of the evidence withheld in this case, and the fact that had Mr. Ford-Bey had this information he

9

would not have pleaded guilty, the Government's attempt to shield itself from *Brady*'s obligations is wrong.

In *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), the Fourth Circuit held that a law enforcement officer's misconduct – lying in a sworn affidavit to obtain a search warrant of the defendant's residence – rendered the defendant's subsequent guilty plea involuntary. *Id.* While the Court did not address whether this same misconduct violated the Government's obligations under *Brady v. Maryland,* the same rationale for vacating Mr. Ford-Bey's guilty plea applies in this case.

> Our decision to vacate Defendant's plea is supported by the important interest of deterring police misconduct. *See e.g. Franks v. Delaware,* 438 U.S. 154, 165–66 (1978) (applying the exclusionary rule to deter deliberate or reckless untruthfulness in warrant affidavits); *Stone v. Powell,* 428 U.S. 465, 492, (1976) (stating that "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease"). If a defendant cannot challenge the validity of a plea based on subsequently discovered police misconduct, officers may be more likely to engage in such conduct, as well as more likely to conceal it to help elicit guilty pleas. *See Sanchez v. United States,* 50 F.3d 1448, 1453 (9th Cir.1995) (stating that "if a defendant may not raise a *Brady* [*v. Maryland* ] claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas").

*Fisher*, 711 F.3d at 469.

Here, withholding material information regarding the facts and circumstances of the Texas truck stop rendered Mr. Ford-Bey's plea involuntary. The Government withheld information regarding the propriety of the Texas truck stop. The Government's evidence against Petitioner was almost entirely based on this seizure. Prior to the Texas truck stop, the Government had not been investigating Mr. Ford-Bey. In this case, failing to provide the defendant with information regarding the Texas truck stop violated *Brady v. Maryland* and requires that this Court vacate Mr. Ford-Bey's convictions.

## IV. Inconsistent Theories of Prosecution.

Mr. Ford-Bey maintains that the Government violated his right to Due Process by taking materially different positions in his case and the case of the truck driver Eric Bobele. Mr. Ford-Bey's co-conspirator believed that he was hauling marijuana across the country for Mr. Ford-Bey. He testified before the grand jury, and pleaded guilty to a marijuana offense. However, at Mr. Ford-Bey's sentencing, the Government used Mr. Bobele's testimony, and extrapolated that every trip he made across country for Mr. Ford-Bey actually involved cocaine and not marijuana. As such, the Government was able to convince this Court that the amount of drugs reasonably attributable to Mr. Ford-Bey was approximately, 1700 kilograms of cocaine. 6/4/15 Tr. at p. 8-10.

This inconsistency – hauling marijuana v. cocaine – stands at the core of the Government's case against Mr. Ford-Bey. *See United States v. Higgs*, 353 F.3d 281, 326 (4th Cir. 2003) (A due process violation may occur "if an inconsistency . . . exist[s] at the *core* of the prosecutor's case against the defendants for the same crime. . . ."). Mr. Bobele testified in detail that he had been hired to transport high-grade marijuana, and yet the Government successfully argued that each prior shipment that Mr. Bobele made was for the purpose of shipping cocaine alone. As a result, Mr. Ford-Bey was denied Due Process of law and the right to a fair proceeding based on the Government's use of inconsistent factual theories to obtain convictions against him and the cooperating witness Eric Bobele.

## V. Voluntariness of Guilty Plea

As set forth above, prior counsel was ineffective in failing to investigate the circumstances, and move to suppress the seizure that resulted from, the Texas truck stop, as well as misadvising Mr. Ford-Bey regarding the sentence he would receive after

11

pleading guilty. These circumstances, in conjunction with the Government withholding evidence relating to the Texas truck stop render Mr. Ford-Bey's guilty plea involuntary, and not a "knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). In this case, it cannot be said that Mr. Ford-Bey "possesse[d] an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). His trial counsel failed to investigate those facts, and the Government failed to disclose material evidence. As the Supreme Court has affirmed, the ineffective assistance of counsel can render a defendant's plea involuntary where, as here, the plea was based on counsel's deficient performance. *See Hill v. Lockhart*, 474 U.S. 52 (1985).

When trial counsel renders ineffective assistance of counsel by providing erroneous advice to a defendant which induces that defendant to plead guilty, the guilty plea is rendered involuntary. This is precisely what occurred in this case. "If the advice of counsel falls below the minimum required by the Sixth Amendment, the guilty plea cannot be deemed knowing and voluntary[.]" *Childress v. Johnson,* 103 F.3d 1221, 1231 n. 14 (5th Cir.1997)*; see also Mendoza v. Hatch*, 620 F.3d 1261 (10th Cir. 2010) (holding that the defendant's guilty plea was rendered involuntary as a result of trial counsel's ineffective assistance of counsel by providing grossly inaccurate advice to the defendant about the amount of time he would be required to serve if he pleaded guilty); *United States v. Streater*, 70 F.3d 1314 (D.C. Cir. 1995) (counsel's erroneous advice related to the defendant's ability to testify at trial that he did not know drugs were in his car after asserting standing to contest the search of the car at a hearing on a motion to suppress rendered the

defendant's guilty plea involuntary). For these additional reasons, Mr. Ford-Bey's plea should be vacated as it was not entered voluntarily, knowingly or intelligently.

## CONCLUSION

For the reasons presented here and those previously presented, Mr. Ford-Bey respectfully asks this Court to hold a hearing on this motion, grant his motion to vacate, and order a new trial.

Respectfully submitted,

Brennan, McKenna & Lawlor, Chtd.

/s/
_____
Michael E. Lawlor, Esquire
Nicholas G. Madiou, Esquire
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044
mlawlor@verizon.net
nmadiou@brennanmckenna.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2021, a copy of the foregoing Supplemental Memorandum of Law was sent via ECF to the United States Attorney's Office for the District of Maryland.

/s/
_____
Michael E. Lawlor